25164. LAKELAND, *alias* LAIDER, *v.* THE STATE.

DECIDED MAY 7, 1936.

*William Story,* for plaintiff in error.

*H. C. Morgan, solicitor-general, Corbitt & Sumner,* contra.

MacIntyre, J. The indictment charges that Audrey Lakeland, alias Audrey Laider, committed the crime of murder by "cutting and stabbing . . Marie Rice with a certain butcher-knife." Having been convicted of voluntary manslaughter, the defendant assigned error upon the overruling of her motion for new trial. According to the evidence, the defendant entered the room in which the deceased was living, and without any sort of provocation cut the deceased in the back with a butcher-knife at a time when she was seated in a chair, inflicting wounds from which death resulted shortly thereafter. After stating to the jury that the deceased had been giving her trouble about her husband for over a year, and had told her that "she was going to have him" and the defendant could not stop her, the defendant further stated: "I was cooking, and went out to call my husband to cut some wood, . . and I had the knife in my hand, and I didn't dream of seeing them together. I wasn't even thinking about nothing like that, and he went over there and I called him, . . and I went on in there, and as I passed the window I saw they was in the bed together. So I run around the house and I went on in the kitchen, and I stood there in the hall at her door; so the lady of the house, I told her, 'Miss Florence [the woman at whose house the deceased boarded], you know all about this, but that's all right,' I says. And this girl opened the door, and my

husband run out, and then she . . says: 'What's this? What you going to do about it?' And she picked up a piece of broomhandle and hit me, and I was so close on her I cut her back there, and we scuffled, and somebody . . taken me on out. And she was standing up cussing when I left, and I come on out of the room and went over to my house, but really I didn't intend to kill her; I really didn't. . . I didn't want to get in no trouble about nothing like that; but she had been giving me trouble about my husband, and I suffered many days on account of this woman; and if I said anything to her she would cuss at me, . . and I taken all that, and I told her I wasn't going to take no hearsays about it." Unquestionably the evidence supported the verdict. We hold that the court did not err in overruling the general grounds of the motion for new trial.

The evidence would have supported a conviction of murder; and a careful consideration of the defendant's statement to the jury satisfies us that under the law it warranted a conviction of no less a crime than voluntary manslaughter. Under these circumstances, there is no merit in the contention that in giving a certain charge to the jury the court improperly deprived the defendant of her right to defend under the fears of a reasonable person, grounded upon an apparent danger, or of her defense that "the killing took place immediately before or immediately after a wrongful act on the part of the deceased and the husband of the defendant, the nature of which act was such as to excuse the defendant or mitigate the crime." See *Williams* v. *State,* 107 *Ga.* 721 (4) (33 S. E. 648). In regard to the defense last mentioned, we quote from *Daniels* v. *State,* 162 *Ga.* 366 (133 S. E. 866): "While the jury may acquit the slayer of all crime, and should do so if they find that the killing was necessary, or apparently so, either to prevent the commission of a sexual act or the completion of it, yet, if the circumstances were not such as to impress a rational mind that it was necessary to take human life to prevent the sexual intercourse, and if the jury should find that the slayer killed the deceased under a violent and sudden impulse of passion, engendered by the circumstances, the homicide would be manslaughter." To sustain this ruling, the Supreme Court cited *Mays* v. *State,* 88 *Ga.* 399 (14 S. E. 560); *Patterson* v. *State,* 134 *Ga.* 264 (67 S. E. 816). See also *Hill* v. *State,* 64

*Ga.* 453 (2), where this language appears: "The idea of prevention or defense against an impending or progressing wrong must enter into all cases of justifiable homicide." Before concluding this opinion, we desire to state that it appears from the record that the court charged fully, fairly, and as favorably to the accused as she had any right to expect, upon her defense, presented by her statement alone, based upon the improper relations of the deceased and the defendant's husband.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*